John JONES, Appellant,

v.

The STATE of Texas, Appellee.

No. 49782.

Court of Criminal Appeals of Texas.

May 7, 1975.

On State's Motion For Rehearing
Jan. 26, 1977.

James D. Durham, Jr., Amarillo, for appellant.

Tom Curtis, Dist. Atty., and Russell Busby, Asst. Dist. Atty., Amarillo, Jim D. Vollers, State's Atty., and David S. McAngus, Asst. State's Atty., Austin, for the State.

## OPINION

DALLY, Commissioner.

This is an appeal from a conviction for forgery with the intent to defraud and harm another; the punishment enhanced under the provisions of V.T.C.A., Penal Code Section 12.42(a) is imprisonment for four years. We are presented with interesting and important questions concerning the forgery section of the New Penal Code.

The appellant asserts that V.T.C.A., Penal Code Section 32.21 is unconstitutional because it does not require that a person charged with passing a forged instrument have knowledge that it was forged. The appellant argues that the facts in this case illustrate his position. He says that since the check was passed without being endorsed the jury could have believed the appellant did not know the check was forged, but the jury could have believed that he intended to defraud and harm by passing the check unendorsed. Although we agree and find that Section 32.21 standing alone does not require knowledge that a writing passed is a forged writing, we do not find the section to be unconstitutional for this reason. However, the contention does raise issues that need careful consideration.

V.T.C.A., Penal Code Section 32.21 in pertinent part reads as follows:

"(a) For purposes of this section:

"(1) 'Forge' means:

"(A) to alter, make, complete, execute, or authenticate any writing so that it purports:

"(i) to be the act of another who did not authorize that act;

"(ii) to have been executed at a time or place or in a numbered sequence other than was in fact the case; or

"(iii) to be a copy of an original when no such original existed;

"(B) to issue, transfer, register the transfer of, pass, publish, or otherwise utter a writing that is forged within the meaning of Paragraph (A) of this subdivision; or

"(C) to possess a writing that is forged within the meaning of Paragraph (A) with intent to utter it in a manner specified in Paragraph (B) of this subdivision.

"(2) 'Writing' includes:

"(A) printing or any other method of recording information;

"(B) money, coins, tokens, stamps, seals, credit cards, badges, and trademarks; and

"(C) symbols of value, right, privilege, or identification.

"(b) A person commits an offense if he forges a writing with intent to defraud or harm another."

This section unlike the former statutes (Articles 979 et seq. V.A.P.C.) would permit finding a person guilty of an offense for the issuing, transferring, registering the transfer of, passing, publishing, or otherwise uttering a forged writing, even though that person had no knowledge that the writing was forged. The former statutes were held to provide that a person must know the instrument he passed was a forged instrument before he could be found guilty of passing it. E. g., *Albrecht v. State,* 486 S.W.2d 97 (Tex.Cr.App.1972); *Haney v. State,* 438 S.W.2d 580 (Tex.Cr.App.1969).

For the offense of passing a forged instrument other modern penal codes require that there be knowledge that the instrument is a forgery. The American Law Institute's Modern Penal Code, Section 224.1 reads:

"(1) *Definition.* A person is guilty of forgery if, with purpose to defraud or injure anyone, or with knowledge that he is facilitating a fraud or injury to be perpetrated by anyone, the actor:

"(a) alters any writing of another without his authority; or

"(b) makes, completes, executes, authenticates, issues or transfers any writing so that it purports to be the act of another who did not authorize that act, or to have been executed at a time or place or in a numbered sequence other than was in fact the case, or to be a copy of an original when no such original existed; or

"(c) utters any writing which he *knows* to be forged in a manner specified in paragraphs (a) or (b)." (Emphasis added.)

See also N.Y. Penal Law, Sections 170.05–170.30 (McKinney's Consol.Laws, c. 40); Cal.Penal Code, Section 470 (West); 38 Ill. Ann.Stat., Section 17–3 (Smith-Hurd, Supp. 1974); 18 Pa.Stat.Ann., Section 4101.

In defining the culpable mental states "intentionally or with intent" and "knowingly or with knowledge," V.T.C.A., Penal Code, Section 6.03 provides:

"(a) A person acts intentionally, or with intent, with respect to the nature of his conduct or to a result of his conduct when it is his conscious objective or desire to engage in the conduct or cause the result.

"(b) A person acts knowingly, or with knowledge, with respect to the nature of his conduct or to circumstances surrounding his conduct when he is aware of the nature of his conduct or that the circumstances exist. A person acts knowingly, or with knowledge, with respect to a result of his conduct when he is aware that his conduct is reasonably certain to cause the result."

When the Penal Code definition of the words "intentionally or with intent" and "knowingly or with knowledge" are considered it cannot be persuasively argued that the use of the words "intent to defraud or harm" used in Section 32.21(b) means that a defendant to be guilty of the offense must have "knowledge" that the writing he passes is a forged writing.

However, we must also consider V.T.C.A., Penal Code, Section 6.02 which provides:

"(a) Except as provided in Subsection (b) of this section, a person does not commit an offense unless he intentionally, knowingly, recklessly, or with criminal negligence engages in conduct as the definition of the offense requires.

"(b) If the definition of an offense does not prescribe a culpable mental state, a culpable mental state is nevertheless required unless the definition plainly dispenses with any mental element.

"(c) If the definition of an offense does not prescribe a culpable mental state, but one is nevertheless required under Subsection (b) of this section, intent, knowledge, or recklessness suffices to establish criminal responsibility.

"(d) Culpable mental states are classified according to relative degrees, from highest to lowest, as follows:

"(1) intentional;

"(2) knowing;

"(3) reckless;

"(4) criminal negligence.

"(e) Proof of a higher degree of culpability than that charged constitutes proof of the culpability charged."

Section 6.02 provides that even if the definition of an offense does not prescribe a culpable mental state a culpable mental state is required unless the definition of the offense plainly dispenses with a mental state. This section defines four culpable mental states. Two of these mental states, "with intent" and "with knowledge," have application to the offense of issuing, transferring, registering the transfer of, passing, publishing or otherwise uttering a forged instrument. Unless we assume, and this we are unwilling to do, that a kind of strict liability was intended and that those who pass forged instruments are guilty of an offense even though they have no knowledge that the writing passed is forged, the passing of a forged writing requires two culpable mental states. The defendant to commit the offense of passing a forged writing must pass it with knowledge that it is forged as well as having an intent to defraud or harm. This is plainly required when Sections 6.02, 6.03, and 32.21 are construed together, as they must be.

When Section 32.21 is so construed a serious question is raised concerning the indictment under which this appellant stands convicted. This question, if not sufficiently raised by the appellant's brief as required by Article 40.09, Section 9, Vernon's Ann.C.C.P., must be reviewed in the interest of justice under the provisions of Article 40.09, Section 13, V.A.C.C.P.

An indictment that does not allege an offense is fundamentally defective, and a conviction under an indictment that does not allege an offense must be reversed because the conviction is void. *American Plant Food Corporation v. State*, 508 S.W.2d 598 (Tex.Cr.App.1974).

The pertinent part of the indictment in this case alleges that the appellant " . . . on or about the 5th day of February, A.D., 1974, . . . did then and there with the intent to defraud and harm, forge, by passing to Jerry Haile, a writing as follows: . . . " and then a photographic copy of a check appears on the indictment.

This indictment clearly fails to allege that the appellant passed the check knowing that it was forged; it is fundamentally defective.

The judgment is reversed and the cause remanded.

Opinion approved by the Court.

## OPINION

## ON STATE'S MOTION FOR REHEARING

ROBERTS, Judge.

On original submission we held that the forgery indictment in this case was fundamentally defective for failing to allege that the appellant passed the check *knowing it was forged*. We now conclude that this defect is not a fundamental one which may be raised for the first time on appeal.

The pertinent part of our forgery statute, V.T.C.A., Penal Code, Sec. 32.21, reads as follows:

"(a) For purposes of this section:

"(1) 'Forge' means:

"(A) to alter, make, complete, execute or authenticate any writing so that it purports:

"(i) to be the act of another who did not authorize that act;

"(ii) to have been executed at a time or place or in a numbered sequence other than was in fact the case;

"(iii) to be a copy of an original when no such original existed;

"(B) to issue, transfer, register the transfer of, pass, publish, or otherwise utter a writing that is forged within the meaning of Paragraph (A) of this subdivision; or

"(C) to possess a writing that is forged within the meaning of Paragraph (A) with intent to utter it in a manner specified in Paragraph (B) of this subdivision.

"(2) 'Writing' includes:

"(A) printing or any other method of recording information;

"(B) money, coins, tokens, stamps, seals, credit cards, badges, and trademarks; and

"(C) symbols of value, right, privilege, or identification.

"(b) A person commits an offense if he forges a writing with intent to defraud or harm another."

As we observed in our opinion on original submission, this statute, as written, "would permit finding a person guilty of an offense for the issuing, transferring, registering the transfer of, passing, publishing, or otherwise uttering a forged writing, even though that person had no knowledge that the writing was forged." Ante, at page 773.

The question is, then, does an indictment drafted under the strict language of this statute sufficiently charge an offense? Only if it does not is the indictment fundamentally defective. *Standley v. State,* 517 S.W.2d 538 (Tex.Cr.App.1975); *American Plant Food Corp. v. State,* 508 S.W.2d 598 (Tex.Cr.App.1974).

A reading of the statute reveals that it unequivocally prescribes a single culpable mental state for forgery: This is the intent to defraud or harm, which is required by subsection (b) of Section 32.21. See *Teniente v. State,* 533 S.W.2d 805 (Tex.Cr.App. 1976). Thus, the requirement of V.T.C.A., Penal Code, Sec. 6.02(a) is satisfied on the face of the statute; subsections (b) and (c) of Section 6.02 simply do not apply.

On original submission we held that the culpable mental state "with knowledge" also "had application" to the offense of forgery. We remain convinced of the soundness of this conclusion, since many of the acts which constitute forgery under Section 32.21 *imply* a requirement of knowledge on the part of the actor that the instrument was forged. However, this culpable mental state is nowhere mentioned in the statute. The issue, therefore, is whether a forgery indictment which does not allege this *implied* requirement of knowledge is valid.

■ As we noted in *Baldwin v. State,* 538 S.W.2d 109, 111 (Tex.Cr.App.1976):

"Ordinarily an indictment which charges an offense in the terms of the statute is sufficient."

However, it is also well established that:

"It is not always sufficient to follow the language of the statute. There are cases that require greater particularity, either from the obvious intention of the Legislature or from the application of known principles of law." 1 Branch's Ann.P.C., 2d ed., Sec. 514, p. 496.

See also *Lucero v. State,* 502 S.W.2d 128 (Tex.Cr.App.1973) (case 1); *Bouie v. State,* 528 S.W.2d 587 (Tex.Cr.App.1975); *Page v. State,* 532 S.W.2d 341 (Tex.Cr.App.1976).

It seems clear from an examination of our new Penal Code that the Legislature was very much aware of the concept of culpability and the delineation of four carefully defined culpable mental states; in fact, this is one of the major changes in our new Code. See the Practice Commentary to V.T.C.A., Penal Code, Sec. 6.03, and see, V.T.C.A., Penal Code, Sec. 1.07(a)(13); Art. 21.15, V.A.C.C.P., as amended; Art. 37.-09(3), V.A.C.C.P., as amended. This legislative awareness is seen in the forgery statute as well, as we have noted, in the fact that the intent to defraud or harm is made an essential part of the offense. From this we must infer that if the Legislature had desired to make knowledge an essential part of the definition of forgery, it would have done so with clarity and certainty.[1]

---

1. We realize that the Legislature intended to create some offenses without clearly and certainly prescribed culpable mental states. V.T. C.A., Penal Code, Secs. 6.02(b), 6.02(c). However, because the Legislature did include a culpable mental state within the definition of forgery, it affirmatively omitted forgery from this class of offenses.

Thus, we can conclude, first, that the Legislature did not intend to include knowledge that the instrument was forged an essential element of the offense of forgery, and, second, that legislative intent does not provide a requirement that the State allege such knowledge in an indictment.

■ The remaining question is whether "known principles of law" require that the State allege that the accused possessed such knowledge. In answering this question we turn first to Section 224.1 of the Model Penal Code, which was relied upon and reproduced in the opinion on original submission. A careful reading of subsection (1) of Section 224.1, as well as subsection (1)(a) and (1)(b) thereunder, makes it clear that one may be guilty of forgery under the Model Code if he has the *"purpose* to defraud or injure" *or* if he has *"knowledge* that he is facilitating a fraud or injury to be perpetrated by anyone."

It follows that under the Model Code knowledge is not an essential element of forgery *if* there is a purpose to defraud or injure.

On original submission we also relied upon 18 Pa.Stat.Ann., Section 4101—the Pennsylvania forgery statute. Section 4101 follows Section 224.1 of the Model Code almost word for word: The only significant difference between the two is that the Pennsylvania statute substitutes the word "intent" for "purpose" in the first subsection of the statute. Therefore, as is the case with the Model Code, the Pennsylvania forgery statute does not make knowledge an essential element of the offense.

The California [2] and New York [3] forgery statutes—both cited in our original opin-

2. California Penal Code, Section 470 (West), reads as follows:

"Every person who, with intent to defraud, signs the name of another person, or of a fictitious person, knowing that he has no authority so to do, to, or falsely makes, alters, forges, or counterfeits, any charter, letters patent, deed, lease, indenture, writing obligatory, will, testament, codicil, bond, covenant, bank bill or note, post note, check, draft, bill of exchange, contract, promissory note, due bill for the payment of money or property, receipt for money or property, passage ticket, trading stamp, power of attorney, or any certificate of any share, right, or interest in the stock of any corporation or association, or any controller's warrant for the payment of money at the treasury, county order or warrant, or request for the payment of money, or the delivery of goods or chattels of any kind, or for the delivery of any instrument of writing, or acquittance, release, or receipt for money or goods, or any acquittance, release, or discharge of any debt, account, suit, action, demand, or other thing, real or personal, or any transfer or assurance of money, certificate of shares of stock, goods, chattels, or other property whatever, or any letter of attorney, or other power to receive money, or to receive or transfer certificates of shares of stock or annuities, or to let, lease, dispose of, alien, or convey any goods, chattels, lands, or tenements, or other estate, real or personal, or any acceptance or indorsement of any bill of exchange, promissory note, draft, order, or any assignment of any bond, writing obligatory, promissory note, or other contract for money or other property; or counterfeits or forges the seal or handwriting of another; or utters, publishes, passes, or attempts to pass, as true and genuine, any of the above-named false, altered, forged, or counterfeited matters, as above specified and described, knowing the same to be false, altered, forged, or counterfeited, with intent to prejudice, damage, or defraud any person; or who, with intent to defraud, alters, corrupts, or falsifies any record of any will, codicil, conveyance, or other instrument, the record of which is by law evidence, or any record of any judgment of a court or the return of any officer to any process of any court, is guilty of forgery."

3. New York Penal Law, Sections 170.05–170.30 (McKinney), are as follows:

"§ 170.05 Forgery in the third degree

A person is guilty of forgery in the third degree when, with intent to defraud, deceive or injure another, he falsely makes, completes or alters a written instrument.

Forgery in the third degree is a class A misdemeanor.

"§ 170.10 Forgery in the second degree

A person is guilty of forgery in the second degree when, with intent to defraud, deceive or injure another, he falsely makes, completes or alters a written instrument which is or purports to be, or which is calculated to become or to represent if completed:

1. A deed, will, codicil, contract, assignment, commercial instrument, or other instrument which does or may evidence, create, transfer, terminate or otherwise affect a legal right, interest, obligation or status; or

2. A public record, or an instrument filed or required or authorized by law to be filed in or with a public office or public servant; or

ion—appear to require an element of knowledge in some instances, but not in others, while the Illinois statute [4]—also cited in the original opinion—requires both knowledge and an intent to defraud in all cases.

From this mixed group of statutes we cannot conclude that known principles of law require knowledge as an essential element of the offense where there is alleged an intent to defraud.

█ Therefore, we hold that an indictment or information for forgery which fails to allege knowledge as an essential element is not fundamentally defective.

However, because knowledge that the instrument is forged is an element which is strongly implied in the statutory definition

3. A written instrument officially issued or created by a public office, public servant or governmental instrumentality; or

4. Part of an issue of tokens, public transportation transfers, certificates or other articles manufactured and designed for use as symbols of value usable in place of money for the purchase of property or services; or

5. A prescription of a duly licensed physician or other person authorized to issue the same for drug or any instrument or device used in the taking or administering of drugs for which a prescription is required by law.

Forgery in the second degree is a class D felony.

"§ 170.15 Forgery in the first degree

A person is guilty of forgery in the first degree when, with intent to defraud, deceive or injure another, he falsely makes, completes or alters a written instrument which is or purports to be, or which is calculated to become or to represent if completed:

1. Part of an issue of money, stamps, securities or other valuable instruments issued by a government or governmental instrumentality; or

2. Part of an issue of stock, bonds or other instruments representing interests in or claims against a corporate or other organization or its property.

Forgery in the first degree is a class C felony.

"§ 170.20 Criminal possession of a forged instrument in the third degree

A person is guilty of criminal possession of a forged instrument in the third degree when, with knowledge that it is forged and with intent to defraud, deceive or injure another, he utters or possesses a forged instrument.

Criminal possession of a forged instrument in the third degree is a class A misdemeanor.

"§ 170.25 Criminal possession of a forged instrument in the second degree

A person is guilty of criminal possession of a forged instrument in the second degree when, with knowledge that it is forged and with intent to defraud, deceive or injure another, he utters or possesses any forged instrument of a kind specified in section 170.-10.

Criminal possession of a forged instrument in the second degree is a class D felony.

"§ 170.27 Criminal possession of a forged instrument in the second degree; presumption

A person who possesses two or more forged instruments, each of which purports to be a credit card, as that term is defined in subdivision seven of section 155.00, is presumed to possess the same with knowledge that they are forged and with intent to defraud, deceive or injure another.

"§ 170.30 Criminal possession of a forged instrument in the first degree

A person is guilty of criminal possession of a forged instrument in the first degree when, with knowledge that it is forged and with intent to defraud, deceive or injure another, he utters or possesses any forged instrument of a kind specified in section 170.15.

Criminal possession of a forged instrument in the first degree is a class C felony."

4. The Illinois forgery statute, found at 38 Ill. Ann.Stat., Section 17–3, reads as follows:

"§ 17–3. Forgery

(a) A person commits forgery when, with intent to defraud, he knowingly:

(1) Makes or alters any document apparently capable of defrauding another in such manner that it purports to have been made by another or at another time, or with different provisions, or by authority of one who did not give such authority; or

(2) Issues or delivers such document knowing it to have been thus made or altered; or

(3) Possesses, with intent to issue or deliver, any such document knowing it to have been thus made or altered.

(b) An intent to defraud means an intention to cause another to assume, create, transfer, alter or terminate any right, obligation or power with reference to any person or property.

(c) A document apparently capable of defrauding another includes, but is not limited to, one by which any right, obligation or power with reference to any person or property may be created, transferred, altered or terminated.

(d) Sentence.

Forgery is a Class 3 felony."

of forgery, we hold that its absence in an indictment is a matter which may be raised by a motion to quash, but may not be raised for the first time after trial has commenced. See and compare *Melley v. State,* 93 Tex.Cr.R. 522, 248 S.W. 367 (1923); *Shipley v. State,* 84 Tex.Cr.R. 278, 208 S.W. 342 (1919).

This indictment alleges the offense in the language of the statute, including the requisite intent. There was no motion to quash the indictment. Therefore, the fail-ure to allege knowledge is not before us on appeal.

Next, we turn to the grounds of error raised in appellant's brief. A summary of the facts is necessary to a discussion of these grounds.

Omitting the formal parts, the indictment alleges that on February 5, 1974, in Potter County, Texas, John Jones did then and there "with intent to defraud and harm, forge, by passing to Jerry Haile,[5] a writing as follows:

"AND THE GRAND JURORS AFORESAID do further present that prior to the commission of the aforesaid offense by the said John Jones, to-wit, on the 6th day of September, A.D., 1968, in the 47th District Court of Potter County, Texas, in cause number 13480 on the docket of said court, the said John Jones under the name of John Arthur Jones, was duly and legally convicted in said last named court of a felony, to-wit: Assault With Intent to Murder Without Malice, upon an indictment then legally pending in said last named court and of which said court had jurisdiction; and said conviction was a final conviction and was a conviction for an offense committed by him, the said John Jones, prior to the commission of the offense hereinbefore charged against him as set forth in the first paragraph hereof . . ."

The State's first witness was Jerry Don Hale, the owner and operator of a liquor store in Potter County. He testified that on February 5, 1974, the appellant entered his store and, in exchange for liquor and cash, gave him the check which is reproduced in the indictment. The check was not endorsed.

D. M. Newton testified that he was a partner in Greater Southwest Enterprises and that in the early part of 1974[6] he had hired appellant to stack lumber. The appellant worked for one day, and Newton paid the appellant for his work in cash at the end of that day. Newton testified that the appellant agreed to work the next day but

5. The complainant's name is spelled Hale in the transcription of the court reporter's notes.

6. Newton "thought" that the "exact day" was February 4, 1974, but was not completely certain.

did not appear. Newton identified the check passed to Jerry Don Hale as one of his company's checks, but denied that the signature at the bottom of the check was his and also denied that he had authorized *anyone* to sign his name for him on the company's checks. He also testified that the company's checks were ordinarily signed by him *and* his partner (and brother) C. E. Newton, with his partner signing the first of the two signature lines.

Newton then testified that he was told by the secretary at the Midland National Bank that the check had been passed. At that time he looked in his checkbook and found that three checks, including the one passed by appellant, were missing. He stated that he always kept the checkbook in his pickup and that the appellant had been in the pickup on the day that appellant worked for Newton. He also stated that on one occasion that day the appellant (along with another temporary worker) had been alone in the pickup while Newton was not present inside the pickup.

Finally, Newton testified that he never gave a check, "payroll or otherwise," to the appellant.

■ Appellant's first contention is that the evidence is insufficient to show that C. E. Newton, D. M. Newton's partner, did not sign the check. Appellant argues that C. E. Newton, as a partner, had authority to bind the partnership and could have signed D. M. Newton's name to the check. C. E. Newton did not testify.

D. M. Newton's unequivocal testimony that *no one* had authority to sign his name to the checks of Greater Southwest Enterprises is sufficient to show that C. E. Newton did not have this authority. See *Rice v. State,* 484 S.W.2d 589 (Tex.Cr.App.1972); *Ware v. State,* 475 S.W.2d 282 (Tex.Cr.App. 1972). Cf. *Reed v. State,* 533 S.W.2d 35 (Tex.Cr.App.1976). Appellant's contention is overruled.

■ Appellant next contends that because the instrument was not endorsed, it could not be passed as a forged instrument. The forgery statute, V.T.C.A., Penal Code,

Sec. 32.21, is set out on the first page of this opinion and will not be reproduced here.

The testimony of D. M. Newton was sufficient to show, as required by subsection (a)(1)(A)(i) of Section 32.21, that the check was made so that it purported to be his act and that he did not authorize that act. Hale's testimony was sufficient to show, as required by subsection (a)(1)(B) of Section 32.21, that the check was passed. Hale's inadvertent failure to require an indorsement is neither significant nor relevant in establishing the offense charged. This contention is overruled.

■ Appellant next contends that the forgery statute is unconstitutional and in violation of due process because it does not require knowledge that the instrument was forged. Our forgery statute requires that: "A person commits an offense if he forges a writing with intent to defraud or harm another." V.T.C.A., Penal Code, Sec. 32.-21(b). This is sufficient to establish mens rea and thereby to satisfy due process in this regard. See V.T.C.A., Penal Code, Sec. 6.02(e), as well as the Practice Commentary to Section 6.02, and see *King v. State,* 519 S.W.2d 651, 652 (Tex.Cr.App.1975), where it is stated that "the gravamen of forgery offenses is the intent to injure or defraud." Appellant's contention is overruled.

■ Finally, appellant contends that he is entitled to credit for time he served in jail after his arrest but prior to sentencing. The State agrees, citing Art. 42.03, Sec. 2, Vernon's Ann.C.C.P. (as amended, effective August 27, 1973).

Section 2 of Article 42.03 now provides:

"In all criminal cases the judge of the court in which the defendant was convicted *shall* give the defendant credit on his sentence for the time that the defendant has spent in jail in said cause, *from the time of arrest and confinement* until his sentence by the trial court." (Emphasis added.)

The statute is mandatory. *Guerra v. State,* 518 S.W.2d 815, 817 (Tex.Cr.App.1975).

■ Appellant was sentenced on June 20, 1974, after the effective date of the amend-

ment to Section 2 of Article 42.03. The record reflects that the trial judge refused to give the appellant credit for any time he spent in jail prior to sentence. The sentence must be reformed to show that credit is given for time spent in jail after he was arrested. Art. 42.03, Sec. 2, supra; *Guerra v. State,* supra.

However, the record does *not* clearly reflect when the appellant was arrested *in this cause.* This date must be determined in the trial court upon receipt of this Court's mandate, after which appellant shall be given credit from that date as required by Article 42.03, Section 2. See *Guerra v. State,* supra, at note 4.

The State's Motion for Rehearing is granted. As reformed, the judgment is affirmed.

## CONCURRING OPINION ON STATE'S MOTION FOR REHEARING

DOUGLAS, Judge.

I concur in the affirmance of the conviction, but would hold that the indictment is sufficient under the forgery statute even if there had been an exception to or motion to set aside the indictment.

The indictment alleges, in part, that "John Jones * * * on or about the 5th day of February, A.D., 1974, with intent to defraud and harm, forge, by passing to Jerry Haile, a writing as follows: . . ." A copy of the check followed that allegation.

V.T.C.A., Penal Code, Section 32.21, Forgery, provides, in part, as follows:

"(a) For purposes of this section:

"(1) 'Forge' means:

"(A) to alter, make, complete, execute, or authenticate any writing so that it purports:

"(i) to be the act of another who did not authorize that act;

" * * *

"(B) to issue, transfer, register the transfer of, pass, publish, or otherwise utter a writing that is forged within the meaning of Paragraph (A) of this subdivision; . . . .."

The statute does not require knowledge that the instrument passed was forged. It does provide that the passing or transfer of a forged instrument comes within the definition of forgery. A person commits an offense under Section 32.21(b), supra, if he forges a writing with intent to defraud or harm another.

The Legislature was within its authority in defining the offense and repealing the forgery statutes in the former Code. It has provided that it is unlawful to pass an instrument that is forged with intent to defraud even though the person passing the instrument is unaware that it is forged provided that he intends to defraud with that instrument. This is the wrongful conduct that the Legislature has the authority to penalize. There is no need, cause or justification to add an element to the offense not provided for in the statute.

A culpable mental state of intentional passing is alleged in the indictment when it alleged the act with "intent to defraud and harm." This complies with V.T.C.A., Penal Code, Sections 6.02 and 6.03.

In *Teniente v. State,* 533 S.W.2d 805 (Tex.Cr.App.1975), it was contended that a burglary indictment did not allege that the act was knowingly and intentionally done. The indictment alleged in part that ". . . Teniente did then and there with intent to commit theft, enter a habitation without the effective consent of Carlos Reyna, the owner." This Court noted that the gist of the offense of burglary was entry of the habitation with the requisite intent and upheld the indictment. In the present case the gist of the offense is to pass a written instrument with intent to harm or defraud. There is no need for an allegation that he knowingly passed a forged instrument with intent to defraud. This would be like requiring an allegation that he intentionally intended, or that he knowingly intended, to pass the instrument.

It should be noted that an act done intentionally or with intent is one committed with the highest culpable mental state prescribed by the penal code. Knowledge or

the lack thereof may become a legitimate factor in the proof of lack of intent to defraud.

This Court should not use or add prior laws as a part of the new statute. Article 996 of the 1925 Penal Code required knowledge that an instrument was forged before one could be convicted as passing a forged instrument. That statute was expressly repealed by the new penal code.

V.T.C.A., Penal Code, Section 1.03(a), provides:

"(a) Conduct does not constitute an offense unless it is defined as an offense by statute, municipal ordinance, order of a county commissioners court, or rule authorized by and lawfully adopted under a statute."

The indictment alleges an offense under the forgery statute.

### DISSENTING OPINION ON STATE'S MOTION FOR REHEARING

ODOM, Judge.

I dissent to the majority's disposition of this case. In my opinion knowledge that the instrument was forged is an essential element of forgery under the mode of prosecution in this case. In the absence of such a requirement, the innocent passing of a forged check received in payment is a felony even if the recipient has no knowledge that the check was forged. I dissent to such a construction of V.T.C.A., Penal Code Sec. 32.21, and adhere to the reasoning set out in the Court's opinion on original submission.

Furthermore, I observe that the new plurality asserts, "[T]he Legislature did not intend to include knowledge that the instrument was forged an essential element of the offense of forgery," and then, in contradictory fashion, later pronounces, "[K]nowledge that the instrument is forged is an element which is strongly implied in the statutory definition of forgery. . . ." This new element, according to the plurality, suddenly arises upon a motion to quash. Such knowledge either is an element or is not an element; there is no middle ground.

I dissent to the plurality's internal contradictions as well as its ultimate disposition of the issue.

ONION, P. J., joins in this dissent.